[928 NE2d 1035, 902 NYS2d 838]

DOMINIKA ZAKRZEWSKA, Respondent, v THE NEW SCHOOL, Appellant, et al., Defendant.

Argued March 22, 2010; decided May 6, 2010

470

## POINTS OF COUNSEL

*Ward Norris Heller & Reidy LLP*, Rochester (*Thomas S. D'Antonio* and *Meghan M. DiPasquale* of counsel), for appellant. I. Existing precedent supports application of the *Faragher/ Ellerth* defense (*Faragher v Boca Raton*, 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth*, 524 US 742 [1998]) to the claims in this case. (*Kolpien v Family Dollar Stores of Wis., Inc.*, 402 F Supp 2d 971; *Matter of Winkler v New York State Div. of Human Rights*, 59 AD3d 1055, 66 AD3d 1499; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Dunn v Astoria Fed. Sav. & Loan Assn.*, 51 AD3d 474, 11 NY3d 705; *Pace v Ogden Servs. Corp.*, 257 AD2d 101; *Ferraro v Kellwood Co.*, 440 F3d 96; *Randall v Tod-Nik Audiology*, 270 AD2d 38; *Barnum v New York City Tr. Auth.*, 62 AD3d 736; *Citroner v Progressive Cas. Ins. Co.*, 208 F Supp 2d 328; *Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21.) II. The imposition of strict liability on The New School for Kwang-Wen Pan's acts is inconsistent with, and unsupported by, New York law. (*New York State Club Assn. v City of New York*, 69 NY2d 211, 487 US 1; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *Matter of Levy v City Commn. on Human Rights*, 85 NY2d 740; *F. T. B. Realty Corp. v Goodman*, 300 NY 140; *Matter of Kress & Co. v Department of Health*, 283 NY 55; *Wholesale Laundry Bd. of Trade v City of New York*, 17 AD2d 327, 12 NY2d 998; *RJC Realty Holding Corp. v Republic Franklin Ins. Co.*, 2 NY3d 158; *Baker v Allen & Arnink Auto Renting Co.*, 231 NY 8, 543; *Jones v Weigand*, 134 App Div 644; *N.X. v Cabrini Med. Ctr.*, 97 NY2d 247.) III. Even if *Faragher/Ellerth* (*Faragher v Boca Raton*, 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth*, 524 US 742 [1998]) is held inapplicable, the New York City Human Rights Law must be interpreted consistent with established pre-*Faragher/Ellerth* law, and plaintiff's claims are equally untenable as a result. (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Feingold v State of New York*, 366 F3d 138; *Matter of Father Belle Community Ctr. v New York State Div. of Human Rights*, 221 AD2d 44.) IV. The New York City Human Rights Law does not mandate a strict liability standard for the acts of all supervisory staff. (*Faragher v Boca Raton*, 524 US 775; *Burlington Industries, Inc. v Ellerth*, 524 US 742; *Meritor Savings Bank, FSB v Vinson*, 477 US 57; *Ferraro v Kellwood*

*Co.,* 440 F3d 96; *Albemarle Paper Co. v Moody,* 422 US 405; *Matter of Father Belle Community Ctr. v New York State Div. of Human Rights,* 221 AD2d 44; *Sormani v Orange County Community Coll.,* 240 AD2d 724.) V. The policy underlying the Human Rights Law actually is impaired by the recognition of strict employer liability on the facts of this case. (*Jansen v Packaging Corp. of Am.,* 123 F3d 490; *Faragher v Boca Raton,* 524 US 775; *Burlington Industries, Inc. v Ellerth,* 524 US 742.) VI. The 2005 Restoration Act has no application to this case. (*Forrest v Jewish Guild for the Blind,* 3 NY3d 295; *Faragher v Boca Raton,* 524 US 775; *Barnum v New York City Tr. Auth.,* 62 AD3d 736; *Williams v New York City Hous. Auth.,* 61 AD3d 62; *Franz v Dregalla,* 94 AD2d 963; *Matter of Saunders v New York State Div. of Human Rights,* 288 AD2d 478; *Matter of United States Power Squadrons v State Human Rights Appeal Bd.,* 59 NY2d 401; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *People ex rel. Griffith, Inc. v Loughman,* 249 NY 369; *Lewellyn v Frick,* 268 US 238.) VII. The recent judicial activism from the First Department in this area is irrelevant to this case. (*Williams v New York City Hous. Auth.,* 61 AD3d 62; *Faragher v Boca Raton,* 524 US 775; *Burlington Industries, Inc. v Ellerth,* 524 US 742; *Bumpus v New York City Tr. Auth.,* 18 Misc 3d 1131[A], 2008 NY Slip Op 50254[U], 66 AD3d 26; *Farrugia v North Shore Univ. Hosp.,* 13 Misc 3d 740; *Misicki v Caradonna,* 12 NY3d 511.)

*Giskan Solotaroff Anderson & Stewart LLP,* New York City (*Jason L. Solotaroff, Darnley D. Stewart* and *Amanda Masters* of counsel), for respondent. I. The plain language of the vicarious liability provisions of the City Human Rights Law precludes application of the *Faragher/Ellerth* defense (*Faragher v Boca Raton,* 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth,* 524 US 742 [1998]). (*Matter of DaimlerChrysler Corp. v Spitzer,* 7 NY3d 653; *Williams v New York City Hous. Auth.,* 61 AD3d 62; *Matter of SIN, Inc. v Department of Fin. of City of N.Y.,* 71 NY2d 616.) II. The importation of *Faragher/Ellerth* (*Faragher v Boca Raton,* 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth,* 524 US 742 [1998]) would conflict with and undermine the specific intention of the City Council in enacting the vicarious liability provisions, as reflected in the relevant legislative history, and would impermissibly ignore the overall policy— strikingly distinct from title VII of the Civil Rights Act of 1964— that animated the City Human Rights Law. (*Meritor Savings Bank, FSB v Vinson,* 477 US 57.) III. The New School can point to no case applying the vicarious liability provisions of the City

Human Rights Law that holds that the *Faragher/Ellerth* defense (*Faragher v Boca Raton*, 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth*, 524 US 742 [1998]) properly applies to City Human Rights Law claims: (*Matter of Winkler v New York State Div. of Human Rights*, 59 AD3d 1055; *Pace v Ogden Servs. Corp.*, 257 AD2d 101; *Dunn v Astoria Fed. Sav. & Loan Assn.*, 51 AD3d 474; *Randall v Tod-Nik Audiology*, 270 AD2d 38; *Ferraro v Kellwood Co.*, 440 F3d 96; *Citroner v Progressive Cas. Ins. Co.*, 208 F Supp 2d 328; *McGrath v Toys "R" Us, Inc.*, 3 NY3d 421; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Kolpien v Family Dollar Stores of Wis., Inc.*, 402 F Supp 2d 971.) IV. The Local Civil Rights Restoration Act reaffirms the independent purpose and language of the 1991 amendments to the City Human Rights Law, and specifically and unequivocally rejects the "lockstep" approach to City Human Rights Law interpretation. (*McGrath v Toys "R" Us, Inc.*, 3 NY3d 421; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Loeffler v Staten Is. Univ. Hosp.*, 582 F3d 268; *Faragher v Boca Raton*, 524 US 775; *Burlington Industries, Inc. v Ellerth*, 524 US 742; *Barnum v New York City Tr. Auth.*, 62 AD3d 736; *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117; *Matter of Solkav Solartechnik, G.m.b.H. [Besicorp Group]*, 91 NY2d 482.) V. The City Council was authorized to legislate that employers would be strictly liable for the discriminatory acts of their managers and supervisors. (*New York State Club Assn. v City of New York*, 69 NY2d 211; *Wholesale Laundry Bd. of Trade v City of New York*, 17 AD2d 327, 12 NY2d 998; *People v Cook*, 34 NY2d 100; *DJL Rest. Corp. v City of New York*, 96 NY2d 91; *Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99; *F. T. B. Realty Corp. v Goodman*, 300 NY 140; *Matter of Kress & Co. v Department of Health*, 283 NY 55; *Krohn v New York City Police Dept.*, 2 NY3d 329.) VI. This Court should not substitute The New School's policy judgment for that of the City Council. (*Jansen v Packaging Corp. of Am.*, 123 F3d 490; *Campaign for Fiscal Equity, Inc. v State of New York*, 8 NY3d 14; *Matter of Excellus Health Plan v Serio*, 2 NY3d 166; *Matter of Heitzenrater [Hooker Chem. Corp.—Catherwood]*, 19 NY2d 1.) VII. The Court should not rewrite the New York City Human Rights Law to add a distinction between high-level and low-level supervisors.

*Eisenberg & Schnell, LLP*, New York City (*Herbert Eisenberg* and *Peter Basso* of counsel), for National Employment Lawyers Association/NY Chapter and others, amici curiae. I. Importing a doctrine judicially designed as a gap-filler for title VII of the Civil Rights Act of 1964, a statute lacking a vicarious liability

provision, into the City Human Rights Law, a statute with a detailed and explicit set of vicarious liability provisions, would violate basic principles of statutory construction. (*Faragher v Boca Raton*, 524 US 775; *Burlington Industries, Inc. v Ellerth*, 524 US 742; *Matter of Amorosi v South Colonie Ind. Cent. School Dist.*, 9 NY3d 367; *Williams v New York City Hous. Auth.*, 61 AD3d 62; *Matter of SIN, Inc. v Department of Fin. of City of N.Y.*, 71 NY2d 616; *Meritor Savings Bank, FSB v Vinson*, 477 US 57; *Matter of Totem Taxi v New York State Human Rights Appeal Bd.*, 65 NY2d 300.) II. No case law supports the proposition that *Faragher/Ellerth* (*Faragher v Boca Raton*, 524 US 775 [1998]; *Burlington Industries, Inc. v Ellerth*, 524 US 742 [1998]) is consistent with the language of Administrative Code of the City of New York § 8-107 (13). (*Williams v New York City Hous. Auth.*, 61 AD3d 62.) III. The Restoration Act prohibits reliance on cases that assume City Human Rights Law equivalence with state and federal counterparts, fail to consider the language of the City Human Rights Law, or fail to consider the uniquely broad and remedial purposes of the City Human Rights Law. (*Faragher v Boca Raton*, 524 US 775; *Burlington Industries, Inc. v Ellerth*, 524 US 742; *Williams v New York City Hous. Auth.*, 61 AD3d 62; *Loeffler v Staten Is. Univ. Hosp.*, 582 F3d 268; *McGrath v Toys "R" Us, Inc.*, 3 NY3d 421; *Forrest v Jewish Guild for the Blind*, 3 NY3d 295; *Ochei v Coler/Goldwater Mem. Hosp.*, 450 F Supp 2d 275; *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117.) IV. The City Human Rights Law is a valid exercise of local legislative authority. (*Faragher v Boca Raton*, 524 US 775; *Burlington Industries, Inc. v Ellerth*, 524 US 742; *Levin v Yeshiva Univ.*, 96 NY2d 484.)

Bond, Schoeneck & King, PLLC, New York City (*Mark N. Reinharz, Louis P. DiLorenzo* and *Peter A. Jones* of counsel), for Memorial Sloan-Kettering Cancer Center and others, amici curiae. I. The New York City Human Rights Law does not mandate strict liability for conduct by supervisors. (*Matter of Daimler-Chrysler Corp. v Spitzer*, 7 NY3d 653; *Roberts v Tishman Speyer Props., L.P.*, 13 NY3d 270; *Matter of Orens v Novello*, 99 NY2d 180; *Rangolan v County of Nassau*, 96 NY2d 42; *People v Schulz*, 67 NY2d 144; *Matter of Friss v City of Hudson Police Dept.*, 187 AD2d 94; *Kurlander v Incorporated Vil. of Hempstead*, 31 Misc 2d 121; *Matter of Yolanda D.*, 88 NY2d 790; *Matter of Rodriguez v Perales*, 86 NY2d 361; *Leader v Maroney, Ponzini & Spencer*, 97 NY2d 95.) II. A standard of strict liability is inappropriate for sexual harassment claims. (*Burlington Industries, Inc. v El-*

*lerth,* 524 US 742; *Faragher v Boca Raton,* 524 US 775; *Shager v Upjohn Co.,* 913 F2d 398; *Meritor Savings Bank, FSB v Vinson,* 477 US 57; *Spier v Barker,* 35 NY2d 444; *A/S Dampskibssetskabet Torm v United States,* 64 F Supp 2d 298; *Federal Ins. Co. v Sabine Towing & Transp. Co., Inc.,* 783 F2d 347; *Ellerman Lines, Ltd. v The President Harding,* 288 F2d 288; *Jansen v Packaging Corp. of Am.,* 123 F3d 490; *Barnes v Costle,* 561 F2d 983.)

**OPINION OF THE COURT**

READ, J.

In her second amended complaint, dated February 12, 2008, Dominika Zakrzewska brought a diversity suit against Kwang-Wen Pan and The New School in the United States District Court for the Southern District of New York, asserting claims for sexual harassment and retaliation under the New York City Human Rights Law (NYCHRL), title 8 of the New York City Administrative Code. The United States Court of Appeals for the Second Circuit has asked us whether

> "the affirmative defense to employer liability articulated in *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998) and *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742 (1998) appl[ies] to sexual harassment and retaliation claims under section 8-107 of the New York City Administrative Code" (*Zakrzewska v New School,* 574 F3d 24, 28 [2d Cir 2009]).

For the reasons that follow, we answer this question in the negative.

## I.

Zakrzewska enrolled as a freshman at the School in the fall of 2002, and worked part time at the Print Output Center, located within the School's Academic Computing Center, beginning in April 2003. She alleges in her second amended complaint that Pan was her "immediate supervisor" at the Output Center; and that he subjected her to sexually harassing e-mails and conduct, beginning in January 2004 and continuing through May 2005, when she complained to School officials. She further claims that from August 2005 through

2006, Pan covertly monitored her Internet usage at work in retaliation for her accusation.*

On August 13, 2008, the School moved for summary judgment to dismiss Zakrzewska's complaint, arguing that it was not vicariously liable for Pan's alleged sexual harassment, and that Zakrzewska could not establish a prima facie case of retaliation. For purposes of ruling on the motion, the District Court assumed that Zakrzewska had shown that she was sexually harassed by Pan; and mentioned that "there [was] at least some evidence that Pan was a manager or supervisor" (*Zakrzewska*, 598 F Supp 2d at 434), or, put another way, that "there [was] evidence from which a jury could conclude that Pan was a supervisory or managerial employee" (*id.* at 437).

The Judge then remarked that federal and state courts usually treat title VII of the Civil Rights Act of 1964 and local antidiscrimination laws as "substantially co-extensive" and therefore examine claims of employer liability for an employee's unlawful discriminatory acts under "the same analytical lens" (*id.* at 431). But here, the parties disagreed as to whether title VII's *Faragher-Ellerth* defense to sexual harassment liability applied under the NYCHRL; and, if it did, whether the School had satisfied its requirements, or, alternatively, a genuine issue of material fact remained (*id.* at 432). As explained by the District Court, the *Faragher-Ellerth* defense provides that

> "an employer is not liable under Title VII for sexual harassment committed by a supervisory employee if it sustains the burden of proving that (1) no tangible employment action such as discharge, demotion, or undesirable reassignment was taken as part of the alleged harassment, (2) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (3) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise" (*id.* [internal quotation marks omitted]).

Commenting that *Faragher-Ellerth*'s role in NYCHRL cases was "not free from doubt," the Judge elected to consider first whether the School would be entitled to dismissal of the sexual

---

* The facts underlying this lawsuit are set out in detail in the opinion of the United States District Court for the Southern District of New York (*see Zakrzewska v The New School*, 598 F Supp 2d 426 [SD NY 2009]).

harassment claim under *Faragher-Ellerth* (*id.* at 437). After reviewing the record, he concluded that the School was, indeed, "entitled to judgment as a matter of law on the sexual harassment claim, assuming that the *Faragher-Ellerth* defense applie[d] to [Zakrzewska's] NYCHRL claim" (*id.* at 434). Having resolved this issue in the School's favor, the Judge next examined whether the NYCHRL, in fact, makes the *Faragher-Ellerth* defense available to employers sued for sexual harassment.

Section 8-107 (1) (a) of the NYCHRL prohibits discrimination on the basis of gender, and section 8-107 (13) (b) states that

> "[a]n employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

> "(1) the employee or agent *exercised managerial or supervisory responsibility*; or

> "(2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> "(3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct" (emphasis added).

Based on this text, the District Court concluded that

> "the local law *on its face* appear[ed] to impose vicarious liability on an employer for discriminatory acts of (1) a manager or supervisor, without regard to whether the employer or another of its managers or supervisors knew or should have known of those acts, and (2) a co-worker, provided the employer, or a manager or supervisor, knew of and acquiesced in, or should have known of, the co-worker's acts, among other circumstances" (*Zakrzewska*, 598 F Supp 2d at 434 [emphasis added]).

He pointed out, however, that because *Faragher-Ellerth*'s

relevance in NYCHRL cases was "an open question in [the] Circuit," he was obliged to decide "whether the New York courts would be likely to apply *Faragher-Ellerth* or to adopt a different interpretation of [section 8-107 (13) (b)]" (*id.* at 435).

Noting that New York, like most states, emphasizes fidelity to the text when interpreting a statute, the District Court concluded that

> "[h]ere, the plain language of Section 8-107, subd. 13 (b), is inconsistent with the defense crafted by the Supreme Court in *Faragher* and *Ellerth*. [This provision] creates vicarious liability for the acts of managerial and supervisory employees even where the employer has exercised reasonable care to prevent and correct any discriminatory actions and even where the aggrieved employee unreasonably has failed to take advantage of employer-offered corrective opportunities . . . Given the lack of any substantial reason to believe that the New York Court of Appeals would not apply Section 8-107, subd. 13 (b), as it is written . . . , the Court holds that *Faragher-Ellerth* does not apply in NYCHRL cases" (*id.* at 435).

As for Zakrzewska's retaliation claim, the Judge first decided that there were disputed issues of material fact. Further, since retaliation is an unlawful discriminatory practice under the NYCHRL, he noted that the School would be vicariously liable for any retaliation by Pan by virtue of section 8-107 (13) (b), assuming that *Faragher-Ellerth* did not apply. The Judge therefore denied the School's motion for summary judgment dismissing Zakrzewska's complaint.

The District Court then certified an interlocutory appeal to the Second Circuit pursuant to 28 USC § 1292 (b) because he was of the opinion that *Faragher-Ellerth*'s applicability under the NYCHRL was "a controlling question of law," as to which there was "substantial ground for difference of opinion . . . the resolution of which would materially advance the ultimate termination of this litigation" (598 F Supp 2d at 437). The Judge observed that employment discrimination cases figured prominently in the district courts' dockets, and that "[t]he apparent tendency to press claims under the state and city antidiscrimination laws, either in lieu of or in addition to claims under federal statutes, create[d] a genuine need for resolution of the vicarious liability standards applicable to employers under

those statutes" (*id.*). He therefore asked the circuit whether the *Faragher-Ellerth* defense applied to sexual harassment and retaliation claims under section 8-107. The Judge remarked that the circuit might "in turn . . . see fit to certify this state law question to the New York Court of Appeals" (*id.* n 63), which the circuit subsequently did (*see Zakrzewska v New School*, 574 F3d at 28).

## II.

We have "generally interpreted" state and local civil rights statutes "consistently with federal precedent" where the statutes "are *substantively and textually* similar to their federal counterparts" (*McGrath v Toys "R" Us, Inc.*, 3 NY3d 421, 429 [2004] [emphasis added]). And we have always strived to "resolve federal and state employment discrimination claims consistently" (*Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21, 25 [2002]). But we also "construe unambiguous language to give effect to its plain meaning" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]).

Here, as the District Court correctly concluded, the plain language of the NYCHRL precludes the *Faragher-Ellerth* defense. In many ways, the NYCHRL parallels state law prohibiting discrimination by employers (*compare* Administrative Code of City of NY § 8-107 [1] [a], [b] *and* Executive Law § 296). Unlike state law, though, subdivision (13) of section 8-107 of the NYCHRL creates an interrelated set of provisions to govern an employer's liability for an employee's unlawful discriminatory conduct in the workplace. This legislative scheme simply does not match up with the *Faragher-Ellerth* defense.

First, the NYCHRL imposes liability on the employer in three instances: (1) where the offending employee "exercised managerial or supervisory responsibility" (the circumstance alleged in Zakrzewska's complaint); (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take "immediate and appropriate corrective action"; and (3) where the employer "should have known" of the offending employee's unlawful discriminatory conduct yet "failed to exercise reasonable diligence to prevent [it]" (*see* Administrative Code of City of NY § 8-107 [13] [b] [1]-[3], quoted at 477, *supra*). Regarding the first two instances, an employer's antidiscrimination policies and procedures may be considered "in mitigation of the amount of civil penalties or punitive damages" recoverable in

a civil action (*see* Administrative Code of City of NY § 8-107 [13] [e]). As a result, even in cases where mitigation applies, compensatory damages, costs and reasonable attorneys' fees are still recoverable. Further, an employer's antidiscrimination policies and procedures—which are at the heart of the *Faragher-Ellerth* defense—shield against liability, rather than merely diminish otherwise potentially recoverable civil penalties and punitive damages, only where an employer should have known of a *non*-supervisory employee's unlawful discriminatory acts (*id.*).

The New York City Council adopted section 8-107 (13) in 1991 as part of a major overhaul of the NYCHRL. In a side-by-side comparison of then-current law with the proposed new law, the Report of the Council's Committee on General Welfare describes new section 8-107 (13) as providing for

> "[s]trict liability in employment context for acts of managers and supervisors; also liability in employment context for acts of co-workers where employer knew of act and failed to take prompt and effective remedial action or should have known and had not exercised reasonable diligence to prevent. *Employer can mitigate liability for civil penalties and punitive damages by showing affirmative anti-discrimination steps it has taken*" (1991 NY City Legis Ann, at 187 [emphases added]).

Thus, section 8-107 (13)'s legislative history is consonant with its unambiguous language.

Next, NYCHRL § 8-107 (13) is not inconsistent with state laws, as the School contends. Article IX, § 2 (c) of the New York Constitution vests local governments with the power to enact only those laws that are not inconsistent with state law; specifically, "every local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government," as well as labor, and the health and well-being of its residents. We have held that a local law is inconsistent "where local laws prohibit what would be permissible under State law, or impose prerequisite additional restrictions on rights under State law, so as to inhibit the operation of the State's general laws" (*Consolidated Edison Co. of N.Y. v Town of Red Hook*, 60 NY2d 99, 108 [1983] [citations and internal quotation marks omitted]). A local law may, however, provide a greater penalty than state law (*see Wholesale Laundry Bd. of*

*Trade v City of New York*, 17 AD2d 327, 329-330 [1962]). Under these definitions of inconsistency, section 8-107 (13) is consistent with Executive Law § 296, the state antidiscrimination statute. Both prohibit discrimination; NYCHRL § 8-107 merely creates a greater penalty for unlawful discrimination.

■ Further, the School's argument that section 8-107 (13) does not apply to all managers and supervisors is not supported by the statute's text. The School also contends that strict liability for discrimination impedes deterrence of workplace discrimination and so thwarts sound public policy. As the District Court pointed out, however, although "[t]he arguments for applying the *Faragher-Ellerth* test in state and local law cases are not trivial," ultimately such "considerations relevant to policy judgments [are] properly made by legislatures" (*Zakrzewska*, 598 F Supp 2d at 435). For the same reason, we may not apply cases under the State Human Rights Law imposing liability only where the employer encourages, condones or approves the unlawful discriminatory acts (*see Matter of Totem Taxi v New York State Human Rights Appeal Bd.*, 65 NY2d 300 [1985]; *Matter of State Div. of Human Rights v St. Elizabeth's Hosp.*, 66 NY2d 684 [1985]). By the plain language of NYCHRL § 8-107 (13) (b), these are not factors to be considered so long as the offending employee exercised managerial or supervisory control.

Finally, we note that our decision is not inconsistent with our holding in *Forrest v Jewish Guild for the Blind* (3 NY3d 295 [2004]). There, we made the general statement in a footnote that "the human rights provisions of the New York City Administrative Code mirror the provisions of the [State Human Rights Law] and should therefore be analyzed according to the same standards" (*id.* at 305 n 3). The plaintiff in *Forrest* did not argue that NYCHRL § 8-107 (13) imposes strict liability for a supervisor's unlawful discriminatory acts, and so we had no occasion to consider the point. Since the plaintiff did not establish the elements of a hostile work environment under either state or local law, we did not even reach the question of whether the *Faragher-Ellerth* defense applies under the State Human Rights Law (*id.* at 312 n 10).

Accordingly, the certified question should be answered in the negative.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.